UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **KARIM NEJDI**,<br>℅ Dann Law<br>15000 Madison Ave.<br>Lakewood, OH 44107<br><br>         Plaintiff,<br><br>         v.<br><br>**THE HUNTINGTON NATIONAL BANK**,<br>c/o Stephen D. Steinour, Chairman<br>17 S. High St.<br>Columbus, Ohio 43216<br><br>         Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Karim Nejdi, through counsel, for his *Complaint for Damages* against Defendant The Huntington National Bank, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Karim Nejdi ("Karim" or "Plaintiff") is a natural person currently residing in Lake County, Ohio.

2. Defendant The Huntington National Bank ("Huntington") is a wholly-owned subsidiary of Huntington Bancshares, Inc., which is a Federally Chartered National Bank headquartered in Columbus, Ohio.

3. Huntington has bank branches in multiple states and across Ohio, including within Lake County.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction to hear any and all state law claims that are pleaded herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Huntington solicited business within this District, Plaintiff resides in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## SUMMARY OF CLAIMS

7. This action is brought to enforce the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* (ECOA), enacted in 1974, and its implementing rules, prescribed pursuant to 15 U.S.C. § 1691b(a), known as Regulation B, 12 C.F.R. § 1002.1, *et seq.*

8. Plaintiff brings this action to challenge the actions of Huntington with regard to its discrimination against him regarding his application for an extension of credit with Huntington based upon his national origin, race, and/or color.

9. Plaintiff asserts claims for relief against Huntington for violation of the specific rules set forth in ECOA and Regulation B as set forth, *infra*.

10. Plaintiff asserts a private right of action under ECOA and Regulation B and such action provides for remedies including actual damages, punitive damages in an amount not to exceed ten thousand dollars ($10,000.00), the costs of the action, and reasonable attorneys' fees. 15 U.S.C. §§ 1691e(a)-(b) and (d).

## STATEMENT OF FACTS

11. In or around June 2025, Plaintiff's wife, Emily Nejdi ("Emily"), together with Karim (collectively, the "Nejdis"), sought a home equity loan ("HELOC") secured by real property and improvements located at and commonly known as 203 Michelle Ln., Madison, OH 44057 (the "Home").

12. In order to obtain the necessary funding, the Nejdis sought a mortgage loan from Huntington.

13. Emily spoke with Jessica Dodge ("Dodge"), a mortgage loan officer for Huntington, to discuss the HELOC.

14. After Emily discussed the HELOC with Karim, the Nejdis agreed to proceed with an application for the HELOC.

15. On June 20, 2025, Emily requested an in-person meeting with Dodge and Karim to proceed with the HELOC application process.

16. Dodge subsequently advised the application process could be completed via email.

17. On June 24, 2025 and June 25, 2025, Emily sent supporting documentation to Dodge.

18. On June 25, 2025, Dodge submitted a HELOC application (the "Application") to Huntington's Columbus office for processing.

19. Through the Application, the Nejdis sought a loan amount of $60,000.00.

20. On June 26, 2025, Dave Ring ("Ring"), a mortgage loan officer for Huntington from the Columbus office, contacted the Nejdis to request the same documentation that was previously provided to Dodge, specifically, pay stubs.

21. Later that day, Ring called Plaintiff and asked him, "When did you receive your American citizenship?" a question completely unrelated to the loan process.

22. Ring also informed only Plaintiff, and not Emily Nejdi, that he needed to sign a Form SSA-89 because it was "required."

23. On June 27, 2025, Ring informed the Nejdis that the Application had been submitted for conditional approval.

24. On June 30, 2025, Ring claimed that Emily Nejdi needed to provide additional income documentation, even though all requested information had already been submitted.

25. When Plaintiff reviewed the Application, he discovered that Dodge misrepresented Emily Nejdi's income and inaccurately listed Plaintiff's occupation as "laborer," which both he and Emily found deeply offensive.

26. Plaintiff submitted a complaint with Huntington's customer service team explaining that he was deeply disappointed with Huntington's discriminatory and offensive conduct.

27. On July 1, 2025, Plaintiff emailed Huntington to escalate his complaint he submitted through customer service relating to Huntington's discriminatory conduct.

28. Plaintiff also submitted a complaint to the Ohio Civil Rights Commission.

29. On July 2, 2025, Plaintiff called Ring to determine why he questioned Plaintiff's citizenship status and why Dodge put Plaintiff's occupation as "laborer." Ring refused to answer these questions.

30. Plaintiff requested to speak with Ring's manager, who corrected Plaintiff's occupation and acknowledged that Ring should not have asked about Plaintiff's citizenship status.

31. Plaintiff also reported the incident to Dodge's superior and Huntington's executive team.

32. On July 3, 2025, Huntington responded to Plaintiff's complaint, through Katrin, a Customer Advocacy Specialist, by implying that Plaintiff was lying and refusing to take responsibility for the actions of Dodge and Ring.

33. The Nejdis received a Statement of Credit Denial, Termination or Charge dated July 1, 2025, claiming that the Application was denied due to the loan amount requested.

34. On July 3, 2025, the Nejdis obtained an Open-End Mortgage from non-party CrossCounty Mortgage, LLC ("CCM") to secure the payment of up to a credit limit of $62,302.42.

35. On July 8, 2025, Plaintiff received a second loan denial letter from Huntington that now claimed the Application was denied due to "Excessive obligations in relation to income" and "Value of Collateral Not Sufficient."

36. On October 16, 2025, Plaintiff received a letter from Huntington that stated that a previous denial letter was "incomplete or contained inaccurate information."

37. Huntington also provided Plaintiff with a third loan denial letter that claimed the Application was denied due to "Serious Delinquency," "Proportion of Revolving Balances to Revolving Credit Limits Is too High," "Insufficient Length of Credit History," and "Number of Accounts with Delinquency."

## DAMAGES AND IMPACT ON NEJDI

38. Despite being qualified for a mortgage loan in the amount requested, Plaintiff received three inconsistent denial letters after he submitted various complaints concerning Huntington's discriminatory conduct.

39. Huntington treated Plaintiff less favorably than his wife, Emily Nejdi, and others with similar qualifications as himself, presumably due to his first name and Huntington's improper assumptions about Plaintiff.

40. Plaintiff has suffered extreme emotional distress related to Huntington's discriminatory and offensive conduct which resulted in loss of sleep, anxiety, depression, panic, embarrassment, and other significant emotional distress;

## COUNT ONE: VIOLATION OF ECOA
### VIOLATION OF 15 U.S.C. § 1691(a) AND 12 C.F.R. § 1002.7(d)

**(Discrimination of credit applicant based upon national origin)**

41. Plaintiff restates and incorporates all of his statements and allegations contained in paragraphs 1 through 40, in their entirety, as if fully rewritten herein.

42. It is unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of national origin, race, and/or color. 15 U.S.C. § 1691(a)(1) and 12 C.F.R. § 1002.7(a).

43. Plaintiff applied to Huntington directly for an extension of credit from Huntington for funds necessary to obtain a HELOC. Therefore, Plaintiff is an "applicant" as defined by 15 U.S.C. § 1691a(b) and 12 C.F.R. § 1002.2(e).

44. Huntington is a large mortgage lender which "regularly extends, renews, or continues credit" and/or "regularly arranges for the extension, renewal, or continuation of credit." Therefore, Huntington is a "creditor" as defined by 15 U.S.C. § 1691a(e) and 12 C.F.R. § 1002.2(l) and is subject to ECOA and Regulation B.

45. The Application is an "application" as defined by 15 U.S.C. § 1691a(b) and 12 C.F.R. § 1002.2(f).

46. Huntington inaccurately listed Plaintiff's occupation as "laborer" on the Application, asked him, "When did you receive your American citizenship?" and required that he signed a Form SSA-89 due to his name and perceived citizenship status.

47. Plaintiff submitted a complaint with Huntington's customer service team, explaining that he was deeply disappointed with Huntington's discriminatory and offensive conduct, and another with the Ohio Civil Rights Commission.

48. Despite Plaintiff qualifying for a mortgage loan with CCM for nearly the same amount as Huntington, Huntington issued three inconsistent denial letters and failed to offer a mortgage loan to Plaintiff.

49. These denial letters were sent to Plaintiff directly after he filed complaints concerning Huntington's discriminatory and offensive conduct.

50. No material change occurred to Plaintiff's financial condition between June and July 2025, showing that Plaintiff was qualified for a mortgage loan and calling into question Huntington's reasons for denying the Application.

51. As a result of Huntington's actions, Huntington is liable to Plaintiff for actual damages, as further described, *supra*, as well as punitive damages in the amount of $10,000.00. 15 U.S.C. §§ 1691e(a)-(b).

52. Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1691e(d).

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Karim Nejdi respectfully requests that this Court enter an Order granting Judgment against Defendant The Huntington National Bank as follows:

.   Actual damages in an amount to be determined at trial for the allegations contained in Counts One;

A.   Punitive damages to the extent allowed by law for the allegations contained in Count One; and,

B.   Costs and reasonable attorneys' fees as to Count One; and,

C.   Such other relief which this Court may deem appropriate.

## **JURY DEMAND**

Plaintiff Karim Nejdi respectfully demands a trial by jury on all such claims that may be so tried.

                                            Respectfully submitted,

                                            /s/ *Marc E. Dann*
                                            Marc E. Dann (0039425)
                                            Daniel M. Solar (0085632)
                                            Michael A. Smith, Jr. (0097147)
                                            **Dann Law**
                                            15000 Madison Ave.
                                            Lakewood, OH 44107
                                            Telephone: (216) 373-0539
                                            Facsimile: (216) 373-0536
                                            notices@dannlaw.com
                                            *Counsel for Plaintiff Karim Nejdi*